## Costa et ux., Appellants, v. The Croatian Fraternal Union of America.

448

Argued May 5, 1936.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Francis Taptich,* for appellants.

*C. A. Davis,* with him *F. A. Bogadek,* for appellee.

OPINION BY JAMES, J., July 10, 1936:

Joseph C. Costa and Elizabeth Costa, his wife, sued the Croatian Fraternal Union of America in assumpsit on a beneficial certificate in the sum of $800, issued upon the life of Mijo Jalzabetic, a member in good standing at the time of his death in subordinate lodge

No. 1; and the sole question involved was whether the plaintiffs were the beneficiaries of the certificate. The case was tried before McDonald, J. without a jury, who, at the close of plaintiffs' case, directed judgment for the defendant because plaintiffs had failed to make out a prima facie case. The motion to open judgment and for a new trial being refused, plaintiffs now appeal.

On July 18, 1935, Mijo Jalzabetic, while seriously ill at the home of plaintiffs, entered into an agreement with them, the important provision being as follows: "NOW THEREFORE, said party of the first part for and in consideration of One ($1.00) Dollar to him in hand paid, and for the further consideration of being named beneficiary of the said Mijo Jalzabetic in his certificate of insurance which the said Mijo Jalzabetic holds in the Croatian Fraternal Union and insured for the sum of $800.00, does hereby agree to maintain and provide for the said party of the second part with all reasonable comforts of life during the rest of his natural life and maintain him in good standing in the Croatian Fraternal Union, *providing, however, that this agreement is approved by the Board of Directors of the Croatian Fraternal Union.*" (Italics supplied). The deceased member executed a paper requesting the defendant to issue a new certificate, in which his beneficiaries were named as follows: $200 for funeral expenses, $50 for a monument and $550 for Joseph C. Costa and Elizabeth Costa. This conflicted with the agreement which provided that plaintiffs were to be designated as beneficiaries of the entire fund. Attached to the agreement was a certificate executed on ...... day of July 1935, by the president and the secretary of the subordinate lodge that the plaintiffs were honest and reputable citizens and were able and in a position to carry out the terms of the agreement of support. In addition, there was a form of "approval by board of directors" in the following language: "This is to

certify that the above agreement was this day sub-
mitted to the Board of Directors of the Croatian Fra-
ternal Union in triplicate for their approval, and that
said Board of Directors have approved the designation
of Joseph C. Costa, and Elizabeth Costa, as beneficiary
of Mijo Jalzabetic, in accordance with the terms of the
above agreement, and has directed the Supreme Secre-
tary of the Croatian Fraternal Union to issue a new
certificate to Mijo Jalzabetic insured for the sum of
$800.00, in which said Joseph C. Costa and Elizabeth
Costa shall be named as beneficiary. Dated at Pitts-
burgh, Pa., this ...... day of .......... 1935"; which
provided for the signatures of the supreme secretary
and the supreme president of the fraternal union. This
certificate was not executed. The papers executed were
upon forms furnished by the defendant. When the
certificate was signed by the officers of the subordinate
lodge, or when the agreement and the certificate were
presented to the supreme office, located at Pittsburgh,
or what was done by plaintiffs in reference to the ap-
proval of the agreement, the record is silent.

The member died at a hospital on July 29, 1935,
eleven days after the execution of the agreement, and
within a few hours after his death the wife plaintiff
post haste appeared at the office of the defendant. She
testified that in a conversation with Mr. Derkos, the
supreme secretary of the defendant, the latter had said
to her the agreement had been approved. This tes-
timony was objected to and a motion was made to strike
it out, to which the court replied, "Unless it is followed
up with competent evidence, we will disregard it." No
further evidence was offered to show that the agree-
ment and the change of beneficiary were ever actually
approved by the board of directors of the defendant
society.

The phrase "approved by the board of directors" ap-
pears also in another paragraph of the agreement which

relates to naming any other beneficiaries, and in the concluding paragraph provisions are made for the cancellation of the agreement, and the naming of other persons as beneficiaries upon proper proof furnished to the board of directors that the beneficiary named in the agreement has failed to comply with its terms. The agreement is of a rather unusual character and plainly indicates that designations of beneficiaries, by those in such dire straits as the deceased member was, would not be permitted unless actually approved by the board of directors. The agreement clearly contemplates the approval of the board not only as to the fitness and ability of the beneficiaries to comply with their agreement, but also whether it was for the best interest of the member himself. The approval of the board was not a mere formal or ministerial act but required the exercise of discretion.

It is plain that plaintiffs' right to recover must be predicated solely upon the proposition that the agreement had been approved by the board of directors. The attempted designation does not fall within the rule of law, repeatedly upheld, that the courts will give effect to the intention of the insured to change the beneficiary by holding that the change has been accomplished where he has done all he could to comply with the provisions of the policy. In the instant case, the designation of plaintiffs as beneficiaries, as requested by the member, was effective only when actually approved by the board. The only evidence offered by the plaintiffs to show an approval by the board of directors was the alleged statement by the supreme secretary, after the death of the member, to the effect that the agreement had been approved. The court below was of the opinion that this statement was inadmissible for the reason it was not the best evidence and reasoned as follows: "......Statements of officers of a corporation are not the best evidence of the official acts of the corporation. A cor-

poration acts through formal resolutions of its board of directors. Such resolutions must be adopted at proper meetings of the board of directors, and must be recorded upon the minutes of such meetings. Therefore, the best evidence of the actions of the defendant was the minutes of the meetings of the board of directors of the defendant. Such minutes were available to the plaintiffs in this case and could have been brought into court through the use of a subpoena for that purpose. The plaintiffs' failure to subpoena such records and the plaintiffs' failure to show that the board of directors had ever acted in a formal manner to approve this agreement, must be taken as an indication that the board of directors of the defendant never did act in a formal manner upon such approval and that they never did actually approve the agreement in question. Accordingly, the plaintiffs' testimony as to statements by the supreme secretary has been disregarded in this case. This being so, there is no evidence of any kind whatsoever that the defendant ever approved this agreement, and defendant not having approved the same, the plaintiffs cannot recover." On this point we might add that no offer was made to show the resolution was omitted by fraud, accident or mistake. As thus presented, the court was fully warranted in holding that plaintiffs had not made out a prima facie case.

Judgment affirmed.